## Sutherland v. Davis.

May 27, 1941.

744

Woodward, Dawson & Hobson for appellant.

Krieger & Huffaker for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Appellant, Mrs. Jimrose Elliott Sutherland, was severely and permanently injured when appellee Davis, driving the automobile in which she was a passenger, sideswiped another car, ran off the road, and crashed into a tree.

Appellant instituted this action in the Jefferson circuit court seeking damages for the injuries sustained and alleging that they were the direct result of negligence upon the part of appellee. By answer appellee denied the allegations of the petition and pleaded that appellant was guilty of contributory negligence, which issue was joined by reply.

At the conclusion of the evidence for the plaintiff, the defendant moved the court to peremptorily instruct the jury to return a verdict in his favor which motion was overruled and exception taken thereto. At the conclusion of all the evidence said motion was renewed and sustained by the court to which ruling of the court the plaintiff excepted. Appeal has been duly perfected to this court, and, as the sole ground for reversal, appellant urges that there was sufficient conflict in the evidence to submit to the jury the question as to whether appellee was under the influence of intoxicating liquor at the time of the accident to such an extent as to render him incapable of operating his automobile in a proper manner. The ruling of the trial court was based upon the conclusion that since appellant testified to facts, which if taken as true, would bar a recovery by her, she was thereby precluded from introducing or relying on other evidence in the case contradicting her testimony but substantiating her claim.

The assumption of risk of a danger amounts to contributory negligence so as to bar recovery when the injured person is aware of the conditions which create the danger and in addition thereto appreciates in his own mind the danger attendant upon such conditions. Cincinnati, N. O. & T. P. Ry. Co. v. Thompson, 6 Cir.,

236 F. 1. Where the danger attendant upon the conditions is a matter of common knowledge it will be conclusively presumed that the injured person appreciated the danger.

In W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. (2d) 16, 19, the court said:

"It is known of all men that the drinking of intoxicating liquor, though it be not done to an extent of actual intoxication, begets a spirit of recklessness, and is responsible for numerous accidents."

In Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, 332, L. R. A. 1918C, 646, it was said:

"One who voluntarily permits himself to be driven about the streets in a motorcar operated by a drunken chauffeur does not exercise ordinary care for his own safety, and he assumes the danger incident to such drive when he voluntarily places himself in a car which is managed and controlled by an intoxicated driver. This is not because of the imputed negligence rule, but because of the personal negligence of the passenger.   *   *   *

"Even while prosecuting a journey if the driver becomes intoxicated so as to lose control of the vehicle, or is reckless, and this is known to the passenger, ordinary care requires the passenger to call upon the driver to stop and allow him to alight, or turn the management of the vehicle over to another capable of properly directly it, and if the passenger fails to exercise such care and is injured as a result of the negligence or recklessness of the driver and a third person, he may not have recourse of such third person, this being denied him because of his own negligence rather than upon the ground that the negligence of the driver is imputed to him."

In the usual case it is the province of the jury to determine whether a driver is under the influence of intoxicants at the time of the accident to such extent as to render him incapable of properly operating the automobile, and whether his passenger had any cause in the exercise of ordinary care to ascertain the condition of the intoxicated driver or to be apprehensive of his own safety in continuing riding with a driver who had become intoxicated. Toppass v. Perkins' Adm'x, 268 Ky.

186, 104 S. W. (2d) 423. But where the uncontradicted evidence shows the driver to be intoxicated and the passenger was acquainted with such fact, or in the exercise of ordinary care could have become acqrainted with such fact, or where the evidence is such that no other reasonable conclusion could be drawn therefrom, the question is not to be determined by a jury but is to be determined by the court under proper application of the law. Rennolds' Adm'x v. Waggener, 271 Ky. 300, 111 S. W. (2d) 647. With these precepts in mind we will look to the evidence to determine the propriety of the trial court in sustaining the motion for a peremptory instruction.

Mrs. Sutherland and Mr. Davis met either in a tavern or on the street near the intersection of 4th and Gaulbert in Louisville at about 1:30 P. M. on the afternoon of November 20, 1939. They drove to the Bardstown road and proceeded thereon through the town of Buechel, approximately 4 miles southeast of Louisville, thence to Mt. Washington, approximately 17 miles farther, thence to Bloomfield, approximately 17 miles southeast of Mt. Washington. From this point the evidence is conflicting as to whether they drove to Bardstown or drove directly back toward Louisville. In either event on their return journey at about 9:45 P. M. in attempting to pass another automobile traveling in the same direction the accident occurred in the manner hereinbefore set out. Appellee testified that he was driving between 45 and 50 miles per hour at the time. The 4 occupants of the car which was sideswiped testified that he was driving about 75 or 80 miles per hour. The appellee admitted that he had had 4 or 5 drinks from the time he met Mrs. Sutherland until the time of the accident; that he could feel his drinks but was not drunk. He was a little hesitant before he finally answered that he was sober. To the following question he made the following answer. Q. "Had the drinks which you had taken in anywise affected your ability to operate the automobile?" A. "Well, I had had the drinks, I could feel the drinks but I could operate the automobile very well—yes sir." He then testified that he was sober. It was definitely established that they stopped in Bloomfield and appellee admitted this in his testimony on the trial of the case, nevertheless, he had previously testified by deposition that they did not go to Bloomfield.

Appellant testified that they met between 1 and 2

P. M.; appellee started drinking before they reached the town of Buechel; they drove to Bloomfield and Bardstown and stopped at many places, about a dozen in all; appellee purchased a half pint of whisky and drank from the whisky bottle; at every stop appellee would go to a tavern or roadhouse and on two occasions brought to the car highballs which she drank. He progressively and continuously became drunker as they proceeded toward Mt. Washington, Bloomfield, and Bardstown; he commenced staggering on the first stop after they passed through Buechel, and staggered more as he successively went into and returned from each tavern. She admitted that he was becoming drunker and drunker and that at all stops she could have alighted from the car and refused to have driven farther with him; that they stopped approximately an hour in Bloomfield and she remained in the car and waited for him to return; that they stopped approximately an hour in Bardstown and appellee there purchased a bottle of whisky, still she remained in the car and waited for him to return; that he drank whisky from the bottle while in the act of driving the automobile; and it was only after they left Bardstown and after he commenced to drive at such an outrageous rate of speed that she protested and requested him to stop and permit her to leave the car.

The admissions made by appellant in her testimony preclude a recovery by her, under the decisions hereinbefore referred to unless, as she contends, she is entitled to rely on other testimony in direct contradiction of her own. In support of her contention it is argued that her testimony is only a part of the evidence and is not to be given any more weight than other evidence in the case, and, since appellee testified that he was sober at the time of the accident, such testimony raised an issue of fact which could be determined only by the jury; therefore the court erred in sustaining a motion for a peremptory instruction. This contention raises the question of the weight to be given, under the rules of evidence, to admissions against interest of parties to an action.

Admissions are divided into 2 classes which are designated in Wigmore in his work on evidence as (1) quasi admissions and (2) judicial admissions. A quasi admission is an act or utterance, usually extra-judicial, which creates an inconsistency with, and discredits to a greater or lesser degree, the present claim, or other evi-

dence, of the person creating the inconsistency; and the person who enacted or uttered it may nevertheless disprove its correctness by the introduction of other evidence. But a judicial admission is conclusive, in that it removes the proposition in question from the field of disputed issue, and may be defined to be a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it; and, as a natural consequence, allows the judge to direct the jury to accept the admission as conclusive of the disputed fact. Wigmore on Evidence, 3rd Edition, Vol. 4, Sections 1058, 1059, pages 20 and 21; Vol. 9, Sections 2588-2590, inclusive, pages 586, 587.

Estoppels, demurrers, and similar admissions have universally been held to be judicial admissions but whether the testimony of a party to an action given on the trial of the case shall be so classified in all cases has been the subject of dispute.

We believe the law to be that admissions fatal to his cause given in the testimony of a party to an action on the trial of the case should be viewed in the light of all the conditions and circumstances proven in the case; and unless all such circumstances and conditions give rise to the probability of error in the party's own testimony, he should not be permitted to avert the consequences of his testimony by the introduction of, or reliance on, other evidence in the case.

In Larson, Jr., Co. v. Wrigley, Jr., Co., 7 Cir., 253 F. 914, 918, it is said:

"In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice, like the laws of physics, etc., that under no circumstances could the averments and admissions be true."

An elaborate discussion of the question will be found in Harlow v. Laclair, 82 N. H. 506, 136 A. 128, 131, 50 A. L. R. 973, in which it is said:

"Most of the cases which hold that a party is bound by his own testimony may be justified upon

the theory that they involve a finding that the circumstances under which the party sought to escape the effect of his own admissions were not 'consistent with honesty and good faith.'

"It appears from these decisions that among the circumstances which should be considered in such a case are the following: (1) Was the party at the time when the occurrence about which he testified took place, and when he testified, in full possession of his mental faculties? (2) Was his intelligence and command of English such that he fully understood the purport of the questions and his answers thereto? (3) What was the nature of the facts to which he testified? Was he simply giving his impressions of an event as a participant or an observer, or was he testifying to facts peculiarly within his own knowledge? (4) Is his testimony contradicted by that of other witnesses? (5) Is the effect of his testimony clear and unequivocal, or are his statements inconsistent and conflicting?"

It would seem reasonable that all of the circumstances related above should be taken into consideration in determining the conclusiveness of the testimony of the party to an action and perhaps such other circumstances as may manifest themselves in a different state of case.

In application of the principles hereinbefore expressed, we find the testimony of appellant shows that appellee was drunk at the time of the accident. She had complete, full, and intimate knowledge of this fact and had acquired such knowledge for such a period of time before the accident that she could have averted the consequences by alighting from the car on any of numerous occasions. She was in full possession of her mental faculties, both at the time of acquiring the knowledge that her companion was drunk, and at the time she testified on the trial of the case, although her own use of intoxicants may have had the effect of rendering her imprudent and reckless at the time of the accident. Her intelligence and command of English is such that she fully understood the purport of the questions addressed to her and the meaning of her answers thereto. She was not simply giving her impressions of an event as a participant or observer but she was testifying to facts peculiarly within her knowledge, i. e., realization of the fact that

appellee was drunk at the time of the accident and that he became increasingly drunker from the time she met him until the occurrence of the accident. Her testimony was contradicted only by appellee himself and his testimony indicates that he was not in full possession of his mental faculties at the time of the accident nor for a considerable period of time immediately preceding same. The testimony of all the other witnesses corroborates her on all facts within their knowledge and contradicts the testimony of appellee to that extent. Her testimony was clear and unequivocal, and her statements were consistent and without conflict.

We therefore conclude that her testimony in this case was properly considered to be a judicial admission and, as such, barred her from disputing it, either by the testimony of appellee or by argument of her counsel, and was of such purport and character as to require the trial judge to direct the jury to accept it as conclusive of the disputed issue.

Wherefore the judgment is affirmed.